## IN THE UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

| | | |
|---|---|---|
| **IN RE:** | § | **Chapter 11** |
| | § | |
| **MGFB PROPERTIES, INC.** | § | |
| | § | **Case No. 10-31455** |
| | § | |
| **Debtor** | § | |

## PLAN OF REORGANIZATION PURSUANT TO
## CHAPTER 11 OF THE U.S. BANKRUPTCY CODE

JOHN M. DUCK
Adams and Reese LLP
4500 One Shell Square
New Orleans, Louisiana  70139
Telephone:  (504) 581-3234
Facsimile: (504) 566-0210

DAVID K. BOWSHER
Adams and Reese LLP
2100 3rd Avenue North
Suite 1100
Birmingham, Alabama  35203
Telephone: (205) 250-5000
Facsimile: (205) 250-5034

*Attorneys for the Debtor*

DATED: July 15, 2010

**INTRODUCTION**

Pursuant to Chapter 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"), MGFB Properties, Inc. ("MGFB Properties"), a debtor and debtor-in-possession referred to herein as the "Debtor," respectfully proposes the following Plan of Reorganization (as it may be amended or supplemented from time to time, and including all Exhibits and Schedules, the "Plan"):

**ARTICLE I**
**RULES OF INTERPRETATION, COMPUTATION OF TIME, GOVERNING LAW, DEFINED TERMS**

1.1    **Rules of Interpretation**.  Whenever appropriate from the context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and each pronoun, whether stated in the masculine, feminine or neuter gender, shall include the masculine, feminine and the neuter gender.  Any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions.  Any reference in the Plan to an existing document, schedule, or exhibit Filed, or to be Filed, shall mean such document, schedule, or exhibit, as it may have been or may be amended, modified or supplemented.  Unless otherwise specified, all references in the Plan to Sections, Articles, Exhibits, and Schedules are references to Sections, Articles, Exhibits, and Schedules of or to the Plan.  Captions and headings to Sections, Articles, Exhibits, and Schedules are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan.  In the event of a conflict between the terms of the body of this Plan and the terms of any Exhibit or Schedule, the terms of the body of this Plan shall control.  The words "include," "includes" and "including" shall be deemed to be followed by the phrase "without limitation."  The word "will" shall be construed to have the same meaning and effect as the word "shall."  Any reference herein to any Law shall be construed as referring to such law as amended, modified, codified or reenacted, in whole or in part, and in effect from time to time.  The words "herein," "hereof" and "hereunder," and words of similar import, shall be construed to refer to this Plan in its entirety and not to any particular provision hereof.  With respect to the determination of any time period, the word "from" means "from and including" and the word "to" means "to and including."  The rules of construction set forth in Section 102 of the Bankruptcy Code shall apply.  Any term used in the Plan that is not defined herein but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to them in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

1.2    **Computation of Time**.  In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply as though the Plan is an order of the Bankruptcy Court.

1.3    **Governing Law**.  Except to the extent that the Bankruptcy Code or the Bankruptcy Rules are applicable, and subject to the provisions of any contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan, the rights and obligations arising under the Plan shall be governed by, and construed in accordance

with, the Laws of the State of Florida, without giving effect to the principles of conflicts of laws thereof.

1.4    **Defined Terms**.    The following terms, as used herein, have the following meanings:

"Administrative Expense Claim" means any Claim constituting a cost or expense of the administration of the Bankruptcy Case asserted under Sections 503(b) and 507(a)(2) of the Bankruptcy Code, including any actual and necessary costs and expenses of preserving the Estate of the Debtor, any actual and necessary costs and expenses of operating the business of the Debtor, any indebtedness or obligations incurred or assumed by the Debtor in connection with the administration and implementation of the Plan, the administration, prosecution or defense of Claims by or against the Debtor and for distributions under the Plan, any Claims for compensation and reimbursement of expenses arising during the period from and after the Petition Date and to the Effective Date or otherwise in accordance with the provisions of the Plan, and any fees or charges assessed against the Debtor's Estate pursuant to 28 U.S.C. § 1930; provided that Professional Fee Claims shall not constitute Administrative Expense Claims.

"Affiliate" means, as to any Entity, any Subsidiary of such Entity, or any other Entity which, directly or indirectly, controls, is controlled by, or is under common control with, such Entity.  For the purposes of this definition, "control" (including with correlative meanings, the terms "controlled by" and "under common control with"), as used with respect to any Entity, shall mean the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of such Entity, whether through the ownership of voting securities or partnership interests, or by contract or otherwise.

"Allowed" means, with reference to any Claim or Equity Interest, (a) any Claim against or Equity Interest in any of the Debtor which has been listed by the Debtor in its Schedules, as such Schedules may be amended by the Debtor from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent and as and to the extent that no contrary proof of claim or interest has been filed, (b) any Claim or Equity Interest allowed hereunder, (c) any Claim or Equity Interest which is not Disputed, or (d) any Claim or Equity Interest which, if Disputed, (i) as to which, pursuant to the Plan or a Final Order of the Bankruptcy Court, the liability of the Debtor and the amount thereof are determined by a final order of a court of competent jurisdiction other than the Bankruptcy Court, or (ii) has been allowed hereunder or by Final Order; provided that any Claims or Equity Interests allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Bankruptcy Court shall not be considered "Allowed" Claims or "Allowed" Equity Interests hereunder. Unless otherwise specified herein, in Section 511 of the Bankruptcy Code, or by order of the Bankruptcy Court, "Allowed" Administrative Expense Claims, "Allowed" Claims, or "Allowed" Equity Interests shall not, for purposes of computation of distributions under the Plan, include interest on such Administrative Expense Claim, Claim or Equity Interest from and after the Petition Date.

"Amended Organizational Documents" means the Amended and Restated Articles of Incorporation, the Amended and Restated Bylaws (if any), and any other similar documents of

the Reorganized Debtor required to implement the Plan, all of which shall comply with the requirements of 11 U.S.C. §§ 1123(a)(6)-(7).

"Applicable Fees and Costs" means, if and to the extent not included in an Allowed Claim, the Allowed fees, costs, and expenses (including Professional Fee Claims) due to the Holder of an Allowed Claim (if any) under the written agreement with the Debtor(s) giving rise to the Allowed Claim or, if there is no such an agreement or applicable Law dictates that such an agreement does not control, under applicable Law.

"Applicable Interest Period" means the period of time from the Petition Date to the date an Allowed Claim is paid in full, or such other period of time (if any) for which interest on an Allowed Claim, or portion thereof, would be due under the Bankruptcy Code (including Sections 506(b) and 726(a)).

"Applicable Interest Rate" means the interest rate accruing on the amount of an Allowed Claim (or portion thereof) that is (i) specified in the written agreement with the Debtor(s) giving rise to the Allowed Claim (or portion thereof), (ii), if there is no such an agreement or applicable Law dictates that such an agreement does not control, the interest rate specified by applicable Law, or (iii) as determined by order of the Bankruptcy Court.

"Assets" means all assets of any nature whatsoever, including the property of the Estate pursuant to Section 541 of the Bankruptcy Code, Causes of Action, Cash, Cash equivalents, claims of right, interests and property, real and personal, tangible and intangible.

"Balloon Payment" means, with respect to a loan, debt, or other right to payment, the payment of all outstanding principal and all accrued but unpaid interest.

"Bankruptcy Case" means the bankruptcy case filed by the Debtor under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court bearing Case No. _____.

"Bankruptcy Code" has the meaning set forth in the initial paragraph hereof.

"Bankruptcy Court" means the United States Bankruptcy Court for the Northern District of Florida or such other court having jurisdiction over the Bankruptcy Case.

"Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, as amended from time to time, as applicable to the Bankruptcy Case, promulgated by the United States Supreme Court under 28 U.S.C. § 2075 and any Local Rules of the Bankruptcy Court.

"BP Cause of Action" means any Cause of Action the Debtor or Reorganized Debtor may have against BP PLC, Halliburton Company, or Transocean Ltd., or any Affiliate of any of the foregoing related to or in connection with the Deepwater Horizon explosion and oil spill.

"Business Day" means a day other than a Saturday, a Sunday or any other day on which commercial banks in Pensacola, Florida, are required or authorized to close by law or executive order.

"Cash" means the lawful currency of the United States of America.

"Causes of Action" means any and all rights, claims, causes and rights of action, whether unliquidated or contingent, of the Debtor existing as of the Effective Date, that are not released, waived, remitted, settled or compromised under the Plan or prior to the Effective Date, including any such rights, claims, causes of action, suits, and proceedings (i) arising under applicable non-bankruptcy Law, which the Debtor may have as debtor and debtor-in-possession (exercising the rights and powers of a trustee pursuant to Section 1107(a) of the Bankruptcy Code), under Section 541 of the Bankruptcy Code, (ii) which the Debtor may have as debtor and debtor-in-possession (exercising the rights and powers of a trustee pursuant to Section 1107(a) of the Bankruptcy Code), under Sections 544 through 553 (inclusive) of the Bankruptcy Code, (iii) under Section 510(c) of the Bankruptcy Code, and (iv) as may be asserted defensively in connection with any objection to a Disputed Claim.

"Claim" means any right to payment from the Debtor, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, known or unknown; or any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

"Class" means a category of Holders of Claims or Equity Interests, as more fully described in Article III of the Plan.

"Collateral" means any property or interest in property of the Debtor's Estate subject to a Lien to secure the payment or performance of a Claim, which Lien is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code, or other applicable Law.

"Confirmation" means the entry of the Confirmation Order.

"Confirmation Date" means the date upon which the Clerk enters the Confirmation Order on the docket in the Bankruptcy Case.

"Confirmation Hearing" means the hearing to consider Confirmation of the Plan in accordance with Section 1129 of the Bankruptcy Code, as the same may be adjourned from time to time.

"Confirmation Order" means the order of the Bankruptcy Court confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

"Consummation" means the occurrence of the Effective Date.

"Debtor" has the meaning set forth in the initial paragraph hereof.

"Disclosure Statement" means the Disclosure Statement filed by the Debtor on the date hereof, as the same may be amended, modified or supplemented from time to time in accordance with the terms and provisions hereof relating to the Plan, including all exhibits and schedules thereto, as approved by the Bankruptcy Court pursuant to Section 1125 of the Bankruptcy Code.

"Disputed Claim" means any Claim against the Debtor, to the extent the allowance of which is the subject of a timely objection or request for estimation in accordance with the Plan, the Bankruptcy Code, the Bankruptcy Rules or the Confirmation Order, or is otherwise disputed by the Debtor or, after the Effective Date, the Reorganized Debtor in accordance with applicable Law, which objection, request for estimation or dispute has not been resolved in the Plan or withdrawn or determined by a Final Order.

"Distribution" means a distribution of Cash or other non-Cash consideration made by the Debtor or, after the Effective Date, the Reorganized Debtor pursuant to the Plan.

"Effective Date" means the time on the first Business Day (a) which is on or after the date of the entry of the Confirmation Order and (b) on which (i) no stay of the Confirmation Order is in effect and (ii) all conditions to the effectiveness of the Plan have been satisfied or waived as provided in Section 11.1.

"Entity" means a person, a corporation, a general partnership, a limited partnership, a limited liability company, a limited liability partnership, an association, a joint stock company, a joint venture, an estate, a trust, an unincorporated organization, a Governmental Authority or any subdivision of any of the foregoing or any other entity.

"Equity Interest" has the meaning assigned to the term "Equity Security" in Section 101(16) of the Bankruptcy Code. Except as otherwise indicated, references to Equity Interests in this Plan shall be deemed to refer to Equity Interests in the Debtor.

"Estate" means the Estate created upon the commencement of the Bankruptcy Case by Section 541 of the Bankruptcy Code.

"Fee Application" means an application of a Professional under Section 330, 331, 503, 506, or 1129(a)(4) of the Bankruptcy Code for allowance of compensation and reimbursement of expenses in the Bankruptcy Case.

"File" or "Filed" means file or filed with the Bankruptcy Court in the Bankruptcy Case.

"Final Decree" means the decree contemplated under Bankruptcy Rule 3022 as applied to these Bankruptcy Case.

"Final Order" or "Final Judgment" means (a) an order or judgment of a court of competent jurisdiction as to which the time to appeal, file a writ of mandamus, petition for certiorari or move for re-argument, reconsideration or rehearing has expired and as to which no appeal, writ of mandamus, petition for certiorari or other proceeding for re-argument, reconsideration or rehearing shall then be pending; or (b) in the event that an appeal, writ of mandamus, petition for certiorari or motion for re-argument, reconsideration or rehearing has been sought with respect to an order or judgment, such order or judgment shall have been affirmed by the highest court to which such order or judgment may be appealed, and/or certiorari and mandamus shall have been denied and the time to take any further appeal, petition for writ of mandamus or certiorari or move for re-argument, reconsideration or rehearing shall have expired; provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be

filed with respect to such order or judgment shall not cause such order or judgment not to be a Final Order or Final Judgment.

"General Unsecured Claim" means a Claim that is not a/an (a) Administrative Expense Claim, (b) Professional Fee Claim, (c) Priority Unsecured Tax Claim, (d) Priority Unsecured Claim, (e) Secured Claim, or (f) Equity Interest. General Unsecured Claims includes all other Claims not separately classified under the Plan or provided for in Article II.

"Governmental Authority" means any court, tribunal, or governmental department, commission, board, bureau, agency or instrumentality of any nation or of any province, state, commonwealth, nation, territory, possession, county, parish, municipality, or other subdivision thereof, whether now or hereafter constituted or existing.

"Holder" and collectively, "Holders" mean a Person or Entity holding an Equity Interest or Claim, and with respect to a vote on the Plan, means the beneficial Holder as of the Distribution record date or any authorized signatory who has completed and executed a Ballot in accordance with the Voting Instructions.

"Impaired" or "Impairment" has the meaning set forth in Section 1124 of the Bankruptcy Code.

"Intellectual Property" means all trademarks, service marks, logos, insignia, patents, copyrights, and other intellectual property.

"Laws" means all applicable statutes, laws, ordinances, regulations, orders, writs, injunctions or decrees of any state, commonwealth, nation, territory, possession, county, township, parish, municipality or Governmental Authority.

"Lender Professional Fees and Expenses Claim" means a Claim or portion thereof by Southeast Capital or Warrington Bank or any Affiliate of either of the foregoing in respect of fees and expenses of lawyers, accountants, consultants, advisors, or other professionals.

"Lien" means a lien, security interest, or other interest or encumbrance as defined in Section 101(37) of the Bankruptcy Code asserted against any property of the Estate.

"MGFB Properties" has the meaning set forth in the initial paragraph hereof.

"Person" means a person as defined in Section 101(41) of the Bankruptcy Code.

"Petition Date" means the date (July 15, 2010) and time at which the Debtor commenced the Bankruptcy Case.

"Plan" has the meaning set forth in the initial paragraph hereof.

"Plan Documents" means all of the agreements, instruments and documents necessary or appropriate to effectuate the terms and conditions of or transactions contemplated by the Plan.

"Prime Rate" means the "Prime Rate" as published in the Money Rates Section of *The Wall Street Journal* on the Effective Date or, if it is not published on the Effective Date, on the last day prior to the Effective Date that it is published.

"Priority Unsecured Claims" means any Claim against the Debtor entitled to priority in right of payment under Sections 507(a)(3)-(7) of the Bankruptcy Code.

"Priority Unsecured Tax Claim" means any Claim against the Debtor entitled to priority in payment under Section 507(a)(8) of the Bankruptcy Code, but only to the extent entitled to such priority.

"Professional" means an Entity (a) employed in accordance with Sections 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date, pursuant to Sections 327, 328, 329, 330 and 331 of the Bankruptcy Code, or (b) to whom compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to Section 503(b)(4), 506, or 1129(a)(4) of the Bankruptcy Code.

"Professional Fee Claim" means those fees and expenses claimed by Professionals pursuant to Sections 330, 331, 503, 506, and/or 1129(a)(4) of the Bankruptcy Code (including Lender Professional Fees and Expenses Claims), and unpaid as of the Confirmation Date.

"Pro Rata" means a proportionate share, so that (a) the ratio of (x) the consideration distributed on account an Allowed Claim to (y) the amount of such Allowed Claim is the same as (b) the ratio of (x) the amount of the consideration distributed on account of all Allowed Claims receiving such consideration to (y) the amount of such Allowed Claims receiving such consideration.

"Reorganized Debtor" means the Debtor following the Effective Date.

"Schedules" means the respective schedules of assets and liabilities, the list of Equity Interests, and the statement of financial affairs filed by the Debtor in accordance with Section 521 of the Bankruptcy Code and the official Bankruptcy Forms of the Bankruptcy Rules as such schedules and statement have been or may be supplemented or amended.

"Secured Claim" means a Claim against the Debtor that is secured by a validly perfected Lien on collateral or that is subject to setoff under Section 553 of the Bankruptcy Code, to the extent of the value of the Collateral or to the extent of the amount subject to setoff, as applicable, as determined in accordance with Section 506(a) of the Bankruptcy Code.

"Southeast Capital" means Southeast Capital, LLC, a Nevada limited liability company.

"Southeast Capital Amended and Restated Note" means the Amended and Restated Renewal Promissory Note by the Reorganized Debtor in favor of Southeast Capital dated as of the Effective Date, substantially in the form of **Exhibit 1.4(a)** hereto, which shall be filed with the Bankruptcy Court at least twenty-one (21) days before the Confirmation Hearing, together with such other related agreements and documents as are necessary or appropriate to give effect to that Amended and Restated Renewal Promissory Note.

"Southeast Capital Claim" means all Claims of Southeast Capital based upon the Southeast Capital Note.

"Southeast Capital Note" means the Renewal Promissory Note by the Debtor in favor of Southeast Capital dated on or about July 6, 2009, and all related agreements, guarantees, financing statements, mortgages, pledges, and other documents.

"Taxes" means all taxes, assessments, filing or other fees, levies, imposts, duties, deductions, withholdings, stamp taxes, interest equalization taxes, capital transaction taxes, severance taxes, foreign exchange taxes or other charges, or other charges of any nature whatsoever, from time to time or at any time imposed by Law or any federal, state or local governmental agency, and "Tax" means any one of the foregoing.

"Unimpaired" has the meaning set forth in Section 1124 of the Bankruptcy Code.

"Unsecured Creditors' Committee" means the official committee (if any) for the Holders of General Unsecured Claims against the Debtor appointed by the U.S. Trustee pursuant to 11 U.S.C. § 1102, as it may be constituted from time to time.

"Warrington Bank" means The Warrington Bank, a Florida banking corporation.

"Warrington Bank Amended and Restated Note" means the Amended and Restated Note by the Reorganized Debtor in favor of Warrington Bank, substantially in the form of **Exhibit 1.4(b)** hereto, which shall be filed with the Bankruptcy Court at least twenty-one (21) days before the Confirmation Hearing, together with such other related agreements and documents as are necessary or appropriate to give effect to that Amended and Restated Note.

"Warrington Bank Claim" means all Claims of Warrington Bank based upon the Warrington Bank Note.

"Warrington Bank Note" means the Note by the Debtor in favor of Warrington Bank dated on or about February 16, 2000, as modified by the Note and Mortgage Modification and Extension Agreements by and between the Debtor and Warrington Bank dated on or about February 16, 2005, and February 16, 2010, and all related agreements, guarantees, financing statements, mortgages, pledges, and other documents.

## ARTICLE II
## NON-CLASSIFIED CLAIMS AND CERTAIN FEES AND TAXES

2.1    **Administrative Expense Claims**.

(a)    Allowed Administrative Expense Claims Against the Debtor. Subject to the bar date provisions of Section 2.1(b), the Holders of Allowed Administrative Expense Claims against the Debtor, unless otherwise agreed to by the Debtor and the Holder or as otherwise set forth in this Plan, are entitled to priority under Section 507(a)(2) of the Bankruptcy Code. An Entity entitled to payment pursuant to Sections 546(c) or 553 of the Bankruptcy Code, and an Entity entitled to payment of administrative expenses pursuant to Sections 503 and 507(a) of the Bankruptcy Code, shall receive from the Reorganized Debtor, on account of such Allowed

Administrative Expense Claim, Cash in the amount of such Allowed Administrative Expense Claim on or before the later of the Effective Date or thirty (30) days after becoming an Allowed Administrative Expense Claim, or as soon thereafter as is practicable (but in no event after the tenth (10th) Business Day after the later of those two dates), unless otherwise agreed to by the Debtor or, after the Effective Date, the Reorganized Debtor and such Entity; provided that an Allowed Administrative Expense Claim representing a liability incurred in the ordinary course of business of the Debtor shall be paid by the Debtor or the Reorganized Debtor in the ordinary course of business and **shall not** be required to File a request for payment as otherwise required herein.

        (b)     Bar Date for Filing Applications for Allowance and Payment of Administrative Expense Claims. Except as otherwise provided in Section 503(b)(1)(D) of the Bankruptcy Code, applications for allowance and payment of Administrative Expense Claims must be filed on or within thirty (30) days after the Effective Date. The Court shall not consider any applications for the allowance of an Administrative Expense Claim filed after such date, and any such Administrative Expense Claim shall be discharged and forever barred. Any Administrative Expense Claim that becomes an Allowed Administrative Expense Claim after the Confirmation Date will be treated like other Allowed Administrative Expense Claims and will be paid on or before the later of the Effective Date or thirty (30) days after becoming an Allowed Administrative Expense Claim, or as soon thereafter as is practicable (but in no event after the tenth (10th) Business Day after the later of those two dates), unless otherwise agreed to by the Debtor or, after the Effective Date, the Reorganized Debtor and the Holder of such Claim. Any such Claim that is Allowed, but determined not to be an Administrative Expense Claim, will be treated as a General Unsecured Claim.

2.2    **Professional Fee Claims**.

        (a)     Allowed Professional Fee Claims Against the Debtor. Except as otherwise provided herein, each Holder of an Allowed Professional Fee Claim shall receive from the Reorganized Debtor, on account of such Allowed Professional Fee Claim, Cash in the amount of such Allowed Professional Fee Claim on or before the later of the Effective Date or thirty (30) days after becoming an Allowed Professional Fee Claim, or as soon thereafter as is practicable (but in no event after the tenth (10th) Business Day after the later of those two dates), unless otherwise agreed to by the Debtor or, after the Effective Date, the Reorganized Debtor and such Holder. Except as otherwise provided herein or otherwise agreed to by the Debtor or, after the Effective Date, the Reorganized Debtor and such Holder, all secured creditors' Professional Fee Claims shall be subject to Section 506(b) of the Bankruptcy Code.

        (b)     Bar Date for Filing Applications for Allowance and Payment of Professional Fee Claims Against the Debtor. Except as otherwise provided herein, applications for allowance and payment of Professional Fee Claims (including Professional Fee Claims that are part of a Claim for Applicable Fees and Costs) incurred on or before the Confirmation Date must be filed on or within sixty (60) days after the Effective Date. The Bankruptcy Court shall not consider any applications for the allowance of a Professional Fee Claim filed after such date, and any such Professional Fee Claim shall be discharged and forever barred.

2.3     **Priority Unsecured Tax Claims**.

(a)     Allowed Priority Unsecured Tax Claims.  Each Holder of an Allowed Priority Unsecured Tax Claim shall receive from the Reorganized Debtor Cash payments commencing on the later of the Effective Date or thirty (30) days after becoming an Allowed Priority Unsecured Tax Claim, or as soon thereafter as is practicable (but in no event after the tenth (10th) Business Day after the later of those two dates), which payments will, no later than five (5) years from the Petition Date, in the aggregate equal the amount of such Allowed Priority Unsecured Tax Claim, with interest at such rate as required by Section 511 of the Bankruptcy Code or otherwise required by Section 1129(a)(9)(C) or (D) of the Bankruptcy Code, and in a manner not less favorable than the most favored nonpriority unsecured claim provided for by the Plan, unless otherwise agreed to by the Debtor or, after the Effective Date, the Reorganized Debtor and such Holder.

(b)     Certain Interest and Penalties on Allowed Priority Unsecured Tax Claims. Holders of Priority Unsecured Tax Claims shall not receive any payment on account of penalties, with respect to, or arising in connection with such Priority Unsecured Tax Claims to the extent permissible under applicable Law, except as expressly provided in this Plan.  However, such Holders of Priority Unsecured Tax Claims will receive post-Petition Date interest, and any interest due under Section 5.5 shall be measured from the date that payments under Section 2.3(a) begin.  The Plan, the Confirmation Order and Section 1141(d) of the Bankruptcy Code provide for the discharge of any such Claims for penalties.  Holders of Priority Unsecured Tax Claims shall not assess or attempt to collect such penalties from the Debtor, the Reorganized Debtor, the Estate, or from any property thereof, except as General Unsecured Claims pursuant to Section 4.5.

2.4     **Certain Fees and Taxes**.

(a)     U.S. Trustee's Fees.  The Debtor will continue to report to the U.S. Trustee by the twentieth (20th) of each month the total disbursements of the Debtor for the previous month and shall timely pay quarterly fees assessed pursuant to 28 U.S.C. § 1930(a)(6) until the Bankruptcy Court enters a Final Decree or an order either converting the Bankruptcy Case to a case under Chapter 7 of the Bankruptcy Code or dismissing the Bankruptcy Case.  Any such fees outstanding and due as of the Effective Date shall be paid in Cash by the Reorganized Debtor on the Effective Date.

(b)     Disallowance of Special Taxes.  The issuance, transfer, or exchange of a security as defined under the Bankruptcy Code or applicable Law, or the making or delivery of any instrument of transfer under this Plan, shall not be subject to any Tax under any state or local law imposing a stamp Tax or similar Tax as provided in Section 1146 of the Bankruptcy Code.

## ARTICLE III
## CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS; BAR DATE

3.1     **Classification**.  Pursuant to Section 1122 of the Bankruptcy Code, a Claim or Equity Interest is placed in a particular Class for purposes of voting on the Plan and receiving Distributions under the Plan only to the extent (i) the Claim or Equity Interest is an Allowed

Claim or Allowed Equity Interest in that Class, and (ii) the Claim or Equity Interest has not been paid, released, or otherwise compromised before the Effective Date.  In accordance with Section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims, Professional Fee Claims specified in Section 507(a)(2) of the Bankruptcy Code, and Priority Unsecured Tax Claims are not classified under the Plan.

3.2    **Identification of Classes**.  The following are the designations for the Classes of Claims against the Estate and Equity Interests in the Debtor:

| Class 1 – Priority Unsecured Claims | Unimpaired | All Allowed Priority Unsecured Claims |
|---|---|---|
| Class 2 – Warrington Bank Secured Claim | Impaired | All Allowed Secured Claims arising under the Warrington Bank Claim |
| Class 3 – Southeast Capital Secured Claim | Impaired | All Allowed Secured Claims arising under the Southeast Capital Claim |
| Class 4 – Other Secured Claims | Impaired | All Allowed Secured Claims not in Class 2 or 3 |
| Class 5 – General Unsecured Claims | Impaired | All Allowed General Unsecured Claims |
| Class 6 –Equity Interests | Unimpaired | All Allowed Equity Interests |

3.3    **Claims Bar Date**.  Except as otherwise provided herein, in the Bankruptcy Code, in the Bankruptcy Rules, or by order of the Bankruptcy Court, all Claims must be filed with the Bankruptcy Court on or before September 13, 2010; provided that, in accordance with Section 2.2(b), Claims for Applicable Fees and Costs (including Professional Fee Claims) must be filed within sixty (60) days after the Effective Date except as otherwise provided herein.  The Bankruptcy Court shall not consider any Claim filed after such dates, and any such Claim shall be discharged and forever barred.

## ARTICLE IV
## IMPAIRMENT AND VOTING OF CLASSES; TREATMENT OF CLASSES

4.1    **Class 1 – Priority Unsecured Claims**.

(a)    Impairment and Voting.  Claims in Class 1 are Unimpaired.  Holders of Allowed Priority Unsecured Claims in Class 1 are not entitled to vote to accept or reject the Plan.

(b)    Treatment.  The Reorganized Debtor shall pay to each holder of an Allowed Priority Unsecured Claim Cash in the amount of such Allowed Priority Unsecured Claim on the later of the Effective Date and the date such Priority Unsecured Claim becomes an Allowed Priority Unsecured Claim, or as soon thereafter as is practicable (but in no event after the tenth (10th) Business Day after the later of those two dates), unless otherwise agreed to by the Debtor or, after the Effective Date, the Reorganized Debtor and such holder.

4.2     **Class 2 – Warrington Bank Secured Claim**.

(a)     Impairment and Voting. The Claim in Class 2 is Impaired. Subject to the terms and conditions of this Plan, the Holder of the Allowed Secured Claim in Class 2 is entitled to vote to accept or reject the Plan.

(b)     Treatment.

(i)     The amount of the Warrington Bank Claim shall be the amount due under the Warrington Bank Note as of the Effective Date, subject to the right of the Debtor and/or Reorganized Debtor to Dispute the Warrington Bank Claim.     The Warrington Bank Claim shall be treated and paid as follows: the balance of the Allowed Warrington Bank Claim shall be determined by the Bankruptcy Court and shall be paid as provided in the Warrington Bank Amended and Restated Note except as otherwise agreed upon by Warrington Bank and the Debtor or, after the Effective Date, the Reorganized Debtor if such terms are more favorable to the Debtor or Reorganized Debtor, as the case may be. The Warrington Bank Amended and Restated Note shall provide, *inter alia*, that (i) the balance of amounts that became due and payable between the Petition Date and the Effective Date (if any) shall be capitalized and added to the amount due under the Warrington Bank Note on the Petition Date to form the amount due under the Warrington Bank Amended and Restated Note (the "Effective Date Warrington Bank Secured Claim"), (ii) the Effective Date Warrington Bank Secured Claim shall be payable (a) from the Effective Date through the seventh (7th) anniversary of the Effective Date, in regular monthly payments of principal plus interest upon the Effective Date Warrington Bank Secured Claim at the simple interest rate per annum equal to the sum of two percent (2%) and the Prime Rate based on a twenty (20) year amortization schedule, or such other rate as the Bankruptcy Court may set,[1] and (b) on the seventh (7th) anniversary of the Effective Date, a Balloon Payment in Cash of all principal, interest, and any Allowed Applicable Fees and Costs then due upon the Effective Date Warrington Bank Secured Claim. The Reorganized Debtor may, in its sole discretion and without any premium or penalty, pay any amount required or allowed to be paid under this Section 4.2(b) before it is due.

(ii)     Notwithstanding anything herein to the contrary, if the Debtor objects to any Lender Professional Fees and Expenses Claim by Warrington Bank, whether such Claim is asserted on its own or as part of another Claim, then no payment shall be made in respect of the Lender Professional Fees and Expenses Claim unless, until, and only to the extent that such Claim is Allowed; provided that, at the Debtor's sole discretion, any such Allowed Lender Professional Fees and Expenses Claim may be converted to principal and paid in accordance with Section 4.2(b)(i).

(iii)     The Liens under the Warrington Bank Note (x) shall be unaffected by the Plan, Confirmation, the Confirmation Order, and Consummation, (y) shall maintain

---

[1] The Debtor reserves the right to request that the Bankruptcy Court determine an appropriate rate of interest at less than the sum of two percent (2%) and the Prime Rate in accordance with the factors set forth in *Till v. SCS Credit Corp.*, 541 U.S. 465 (2004), or to utilize the *Till* analysis to conclude that the sum of two percent (2%) and the Prime Rate is an appropriate and fair interest rate, whether market- or risk-based.

the same validity, priority, and extent that existed on the Petition Date as security for the Allowed Secured Claim and (z) shall secure payment of any and all Obligations under the Warrington Bank Note.

(iv)     The Debtor reserves the right at any time before the Confirmation Hearing to File with the Bankruptcy Court one or more amendments, restatements, or supplements of and/or to the Warrington Bank Amended and Restated Note.

(c)     Cure of Defaults.  On the Effective Date, all defaults that could have arisen before the Effective Date under the Warrington Bank Note shall be deemed cured.

4.3     **Class 3 – Southeast Capital Secured Claim**.

(a)     Impairment and Voting.  The Claim in Class 3 is Impaired.  Subject to the terms and conditions of this Plan, the Holder of the Allowed Secured Claim in Class 3 is entitled to vote to accept or reject the Plan.

(b)     Treatment.

(i)     The amount of the Southeast Capital Claim shall be the amount due under the Southeast Capital Note as of the Effective Date, subject to the right of the Debtor and/or Reorganized Debtor to Dispute the Southeast Capital Claim.  The Southeast Capital Claim shall be treated and paid as follows: the balance of the Allowed Southeast Capital Claim shall be determined by the Bankruptcy Court and shall be paid as provided in the Southeast Capital Amended and Restated Note except as otherwise agreed upon by Warrington Bank and the Debtor or, after the Effective Date, the Reorganized Debtor if such terms are more favorable to the Debtor or Reorganized Debtor, as the case may be. The Southeast Capital Amended and Restated Note shall provide, *inter alia*, that (i) the balance of amounts that became due and payable between the Petition Date and the Effective Date (if any) shall be capitalized and added to the amount due under the Southeast Capital Note on the Petition Date to form the amount due under the Southeast Capital Amended and Restated Note (the "Effective Date Southeast Capital Secured Claim"), (ii) the Effective Date Southeast Capital Secured Claim shall be payable (a) from the Effective Date through the seventh (7th) anniversary of the Effective Date, in regular monthly payments of principal plus interest upon the Effective Date Southeast Capital Secured Claim at the simple interest rate per annum equal to the sum of three percent (3%) and the Prime Rate based on a twenty (20) year amortization schedule, or such other rate as the Bankruptcy Court may set,[2] and (b) on the seventh (7th) anniversary of the Effective Date, a Balloon Payment in Cash of all principal, interest, and any Allowed Applicable Fees and Costs then due upon the Effective Date Southeast Capital Secured Claim.  The Reorganized Debtor may, in its sole discretion and without any premium or penalty, pay any amount required or allowed to be paid under this Section 4.3(b) before it is due.

---

[2] The Debtor reserves the right to request that the Bankruptcy Court determine an appropriate rate of interest at less than the sum of three percent (3%) and the Prime Rate in accordance with the factors set forth in *Till v. SCS Credit Corp.*, 541 U.S. 465 (2004), or to utilize the *Till* analysis to conclude that equal to the sum of three percent (3%) and the Prime Rate is an appropriate and fair interest rate, whether market- or risk-based.

(ii)    Notwithstanding anything herein to the contrary, if the Debtor objects to any Lender Professional Fees and Expenses Claim by Southeast Capital, whether such Claim is asserted on its own or as part of another Claim, then no payment shall be made in respect of the Lender Professional Fees and Expenses Claim unless, until, and only to the extent that such Claim is Allowed; provided that, at the Debtor's sole discretion, any such Allowed Lender Professional Fees and Expenses Claim may be converted to principal and paid in accordance with Section 4.3(b)(i).

(iii)    The Liens under the Southeast Capital Note (x) shall be unaffected by the Plan, Confirmation, the Confirmation Order, and Consummation, (y) shall maintain the same validity, priority, and extent that existed on the Petition Date as security for the Allowed Secured Claim and (z) shall secure payment of any and all Obligations under the Southeast Capital Note; provided that, upon the Effective Date, the Collateral subject to those Liens shall be expanded to include all Assets of the Reorganized Debtor (including the BP Cause of Action and Intellectual Property).

(iv)    The Debtor reserves the right at any time before the Confirmation Hearing to File with the Bankruptcy Court one or more amendments, restatements, or supplements of and/or to the Southeast Capital Amended and Restated Note.

(c)    Cure of Defaults.    On the Effective Date, all defaults that could have arisen before the Effective Date under Southeast Capital Note shall be deemed cured.

4.4    **Class 4 – Other Secured Claims**.

(a)    Impairment and Voting.    Claims in Class 4 are Impaired.  Subject to the terms and conditions of the Plan, the Holders of Allowed Secured Claims in Class 4 are entitled to vote to accept or reject the Plan.

(b)    Treatment.    Unless otherwise agreed to by the Debtor or, after the Effective Date, the Reorganized Debtor and such Holder, the Reorganized Debtor shall pay to each Holder of an Allowed Secured Claim not in Class 2 or 3 in Cash (i) (x) eighty percent (80%) of the amount of the Allowed Secured Claim on the later of the Effective Date and the date the those amounts are Allowed, or as soon thereafter as is practicable (but in no event after the tenth (10th) Business Day after the later of those two dates) and (y) the remaining twenty percent (20%) of the amount of the Allowed Secured Claim plus Allowed interest on the entire amount of the Allowed Secured Claim at the Applicable Interest Rate for the Applicable Interest Period as provided by applicable Law plus Allowed Applicable Fees and Costs as provided by applicable Law within twelve (12) months of the Effective Date in four (4) quarterly installments.  Each Lien securing any Allowed Secured Claim in Class 4 (x) shall be unaffected by the Plan, Confirmation, and Consummation, (y) shall maintain the same validity, priority, and extent that existed on the Petition Date as security for the Allowed Secured Claim and (z) shall secure the payment of the Allowed Secured Claim provided for herein.

4.5    **Class 5 – General Unsecured Claims**.

(a)    <u>Impairment and Voting</u>. Claims in Class 5 are Impaired. Subject to the terms and conditions of the Plan, the Holders of Allowed Claims in Class 5 are entitled to vote to accept or reject the Plan.

(b)    <u>Treatment</u>. Unless otherwise agreed to by the Debtor or, after the Effective Date, the Reorganized Debtor and such Holder, the Reorganized Debtor shall pay to each Holder of an Allowed General Unsecured Claim in Cash (i) (x) seventy-five percent (75%) of the amount of the Allowed General Unsecured Claim on the later of the Effective Date and the date the General Unsecured Claim becomes an Allowed General Unsecured Claim, or as soon thereafter as is practicable (but in no event after the tenth (10th) Business Day after the later of those two dates) and (y) the remaining twenty-five percent (25%) of the amount of the Allowed General Unsecured Claim <u>plus</u> Allowed interest on the entire amount of the Allowed Secured Claim at the Applicable Interest Rate for the Applicable Interest Period as provided by applicable Law in four (4) quarterly installments.

4.6    **Class 6 –Equity Interests**.

(a)    <u>Impairment and Voting</u>. Equity Interests in Class 6 are not Impaired. The Holders of Allowed Equity Interests in Class 6 are not entitled to vote to accept or reject the Plan.

(b)    <u>Treatment</u>. Holders of Allowed Equity Interests shall retain their Allowed Equity Interests, which shall automatically constitute identical Equity Interests in the Reorganized Debtor on the Effective Date.

**ARTICLE V**
**DISPUTED CLAIMS**

5.1    **Right to Object to Claims**. Except to the extent a Claim is Allowed hereunder, the Debtor and, after the Effective Date, the Reorganized Debtor shall have the exclusive right to object to the allowance, amount, or classification of Claims and such objections may be litigated (including to Final Order) by the Debtor or Reorganized Debtor, as the case may be, or compromised and settled in accordance with its business judgment without further order of the Bankruptcy Court.

5.2    **Deadline for Objecting to Claims**. As soon as reasonably practicable, but in no event later than ninety (90) days after the Effective Date, unless otherwise ordered by the Bankruptcy Court (which may be ordered upon *ex parte* motion of the Reorganized Debtor), all objections to Claims shall be filed with the Bankruptcy Court and served upon the Holders of each of the Claims. An objection shall notify the Holder of the Claim of the deadline for responding to such objection.

5.3    **Deadline for Responding to Objections**. Within thirty (30) days after service of an objection, any written response to the objection must be filed with the Bankruptcy Court by the Holder of the objected-to Claim and must be served upon the Debtor or, after the Effective Date, the Reorganized Debtor and upon counsel to the Debtor or Reorganized Debtor, as the case

may be. Failure to file a written response by that date shall constitute a waiver and release of the subject Claim, and shall cause the Bankruptcy Court to enter a default judgment against the non-responding Holder of the Claim granting the relief requested in the objection.

      5.4    **Estimation of Claims**. The Debtor may request the Bankruptcy Court to estimate any contingent or Disputed Claim for purposes of allowance under Section 502(c) of the Bankruptcy Code.

      5.5    **Payment of Disputed Claims**. At such time as a Disputed Claim becomes an Allowed Claim, the Reorganized Debtor shall distribute to the Holder thereof the Distribution, if any, to which such Holder is then entitled under the Plan. The Holder of a Disputed Claim that later becomes an Allowed Claim shall receive interest at the Applicable Rate from the Effective Date (or such earlier or different date as is provided for herein) to the date of the Distribution in respect of the Allowed Claim. The Debtor or, after the Effective Date, the Reorganized Debtor may, but shall not be required to, make a Distribution with respect to the portion of a Disputed Claim that is not in dispute (if any) pending the resolution of the entire Claim.

## ARTICLE VI
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

      6.1    **Assumption and Rejection**. On the Effective Date, all executory contracts and unexpired leases that exist between the Debtor and any Entity shall be assumed, except for any executory contract or unexpired lease that (i) has been assumed or rejected pursuant to an order of the Bankruptcy Court entered prior to the Confirmation Date, (ii) is identified as an executory contract or unexpired lease to be rejected on the Effective Date on **Exhibit 6.1** hereto, which shall be filed with the Bankruptcy Court at least twenty-one (21) days before the Confirmation Hearing, as that Exhibit may be amended, restated, or supplemented prior to the commencement of the Confirmation Hearing, (iii) is separately addressed herein, or (iv) has a different time period for assumption or rejection provided by order of the Bankruptcy Court or by agreement between the parties to such executory contract or unexpired lease.

      6.2    **Approval of Assumption and Rejection**. Except as otherwise provided in the Plan, entry of the Confirmation Order shall constitute (i) the approval, pursuant to Sections 365(a) and 1123(b)(2) of the Bankruptcy Code, of the assumption, assumption and assignment, or rejection of the executory contracts and unexpired leases, as the case may be, pursuant to this Article VI, and (ii) the extension of time pursuant to Section 365(d)(4) of the Bankruptcy Code within which the Debtor may assume or reject the unexpired leases specified in this Article VI through the Confirmation Date.

      6.3    **Cure of Defaults**. All cure payments that may be required by Section 365(b)(1) of the Bankruptcy Code under any executory contract or unexpired lease that is assumed under this Plan shall be made by the Debtor on the Effective Date or as soon as practicable thereafter. All requests for cure payments by a party to such assumed contract or lease must be filed pursuant to Section 2.1, unless such cure payments are agreed to by the Debtor or are otherwise determined by the Bankruptcy Court upon appropriate notice and hearing. In the event of a dispute regarding the amount of any cure payment, the ability of the Debtor to provide adequate assurance of future performance or any other matter pertaining to assumption, the Debtor shall

make such cure payments required by Section 365(b)(1) of the Bankruptcy Code following the later of the Effective Date (or as soon as practicable thereafter) and the date of the entry of a Final Order resolving such dispute.

6.4    **Rejection Damage Claims**.  Claims arising out of the rejection of an executory contact or unexpired lease pursuant to this Article VI must be filed with the Bankruptcy Court no later than thirty (30) days after entry of the Confirmation Order.  Any such Claims not filed within such time will be forever barred and shall not be enforceable against the Debtor or the Reorganized Debtor, or any of its properties or agents, successors, or assigns.  Unless otherwise order by the Bankruptcy Court, all Claims arising from the rejection of an executory contact or unexpired lease shall be treated as General Unsecured Claims.

### ARTICLE VII
### MEANS OF IMPLEMENTATION AND EXECUTION OF PLAN

7.1    **Generally**.  Upon Confirmation, the Debtor shall be authorized to take all necessary steps, and perform all necessary acts, to consummate the terms and conditions of this Plan including the execution and filing of all documents required or contemplated by this Plan. In connection with the occurrence of the Effective Date, the Reorganized Debtor, and each of the officers thereof, is authorized to execute, deliver, or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

7.2    **Directors and Officers**.  On the Effective Date, the current officers, directors, and managers of the Debtor will continue to hold their respective positions with the Reorganized Debtor.  Their compensation will continue at current levels unless and until the Reorganized Debtor's Board of Directors, acting in the ordinary course of business, changes those levels.

7.3    **Causes of Action**.  The Debtor and, after the Effective Date, the Reorganized Debtor, specifically reserve and shall have the exclusive right to bring, prosecute, waive, release, compromise, and settle all Causes of Action, which are specifically retained under the terms of this Plan and/or set forth on **Exhibit C** to the Disclosure Statement.  The recovery from all Causes of Action shall become Assets of the Debtor and, after the Effective Date, the Reorganized Debtor in accordance with this Plan.  Further, the Debtor shall be entitled to offset such amounts as may be awarded to the Debtor or Reorganized Debtor with respect to such Causes of Action against Distributions due hereunder to the Holder of a Claim, whether Disputed or Allowed; <u>provided</u> that no such offset shall occur, and no Distribution shall be delayed, unless, until, and only to the extent that the Cause of Action is reduced to judgment by appropriate Governmental Authority or as agreed by the parties.  Neither the Allowance of a Claim against the Debtor nor the making of Distributions pursuant hereto to a Holder of Claims will bar or limit the right of the Debtor or Reorganized Debtor to bring any Causes of Action held against the Holder of any Claim, even if the Claim that is Allowed or on account of which Distributions are made arises from the same agreement, transactions or occurrence from which the Causes of Action arise. For purposes of Plan implementation, the Reorganized Debtor shall constitute representatives of its Estate, fully authorized to prosecute all Causes of Action to final judgment pursuant to Section 1123(b)(3)(B) of the Bankruptcy Code.

7.4     **Costs and Expenses**.  From and after the Effective Date, costs and expenses shall be paid in the ordinary course of business.

## ARTICLE VIII
## DISTRIBUTIONS

8.1     **Distributions of Cash**.  Any Distribution of Cash made pursuant to the Plan shall be made by check drawn on a domestic bank or by wire transfer from a domestic bank; provided that payment to foreign Holders of Allowed Claims may be in such funds and by such means (as determined by the Debtor or, after the Effective Date, the Reorganized Debtor in its sole discretion) as are customary or necessary in a particular foreign jurisdiction.

8.2     **Timing of Distributions**.  Any Distribution to be made under the Plan on a day other than a Business Day shall be due on the next succeeding Business Day.  If a Claim or portion thereof has not been Allowed at the time a Distribution in respect of that Claim or portion would be due under the Plan, then, subject to Section 5.5, that Distribution shall not occur at that time and shall instead occur within ten (10) Business Days of the Claim or portion becoming Allowed; provided that, if a portion of the Claim has been Allowed at the time a Distribution is due, then, in accordance with Section 5.5, the Distribution in respect of the Allowed portion may be made in accordance with the terms of the Plan.  Except as otherwise provided herein, all Cash Distributions required under the Plan to Holders of Allowed Claims shall be made by the Reorganized Debtor on the Effective Date, or as soon thereafter as is practicable, from Cash on hand and/or income generated through operations.

8.3     **Record Date for Voting on Plan**.  The transfer registers for each of the Classes of Claims and Equity Interests as maintained by the Debtor or any third party shall be deemed closed on the date of entry of an order of the Bankruptcy Court approving the Disclosure Statement (or, with respect to any Class, any later date to which the Debtor agrees in its sole discretion) for purposes of voting on the Plan, and there shall be no further changes to reflect any new record Holders of any Claims or Equity Interests for purposes of voting on the Plan.

8.4     **Minimum Distributions; No Fractional Distributions; No Interest**.  No Distribution of Cash less than twenty-five Dollars ($25.00) is required to be made to any Holder of an Allowed Claim unless a request therefore is made in writing to the Debtor or, after the Effective Date, the Reorganized Debtor.  No Distribution of fractional dollars of the Reorganized Debtor is required; Distributions shall be rounded up or down to the nearest whole dollar.

8.5     **Delivery of Distributions**.  Subject to Bankruptcy Rule 9010, distributions to Holders of Allowed Claims shall be made at the address of each such Holder as set forth on the Schedules filed by the Debtor with the Bankruptcy Court, unless superseded by the address as set forth on proofs of claim filed by such Holders or other writing notifying Debtor or, after the Effective Date, the Reorganized Debtor of a change of address (or at the last known address of such a Holder if no proof of claim is filed or if the Debtor and Reorganized Debtor have not been notified in writing of a change of address).

8.6     **Undeliverable Distributions**.  If any Distribution to a Holder of an Allowed Claim is returned as undeliverable, no further Distributions to such Holder shall be made, unless

and until the Debtor or, after the Effective Date, the Reorganized Debtor is notified of such Holder's then current address, at which time all missed Distributions shall be made to such Holder. All Claims for undeliverable Distributions shall be made on or before the later of the first (1st) anniversary of the Effective Date and the date ninety (90) days after such Claim is Allowed. After such date, all property held for Distribution to any Holder of an Allowed Claim shall be deemed unclaimed property under Section 347(b) of the Bankruptcy Code and shall become vested in the Reorganized Debtor, and the Claim of any Holder with respect to such property shall be discharged and forever barred.

8.7    **Withholding**.  The Debtor or, after the Effective Date, the Reorganized Debtor may at any time withhold from any Distribution to any Holder of an Allowed Claim (except the Internal Revenue Service) such amounts sufficient to pay any Tax or other charge that has been or may be imposed on such Holder with respect to the amount distributable or to be distributed under the income Tax laws of the United States or of any other Governmental Authority by reason of any Distribution provided for in the Plan, whenever such withholding is determined by the Debtor or, after the Effective Date, the Reorganized Debtor and in its sole discretion, to be required by any Law.  The Debtor or, after the Effective Date, the Reorganized Debtor in the exercise of its sole discretion may enter into agreements with taxing or other Governmental Authorities for the payment of such amounts that may be withheld in accordance with the provisions of this Section 8.7.  Notwithstanding the foregoing but without prejudice to any rights of the Debtor or, after the Effective Date, the Reorganized Debtor, such Holder of an Allowed Claim shall have the right with respect to the United States, or any other Governmental Authority, to contest the imposition of any tax or other charge by reason of any Distribution under the Plan.

8.8    **Time Bar to Cash Payments**.  Checks issued in respect of Allowed Claims shall be null and void if not negotiated within ninety (90) days after the date of issuance thereof. Requests for reissuance of any check shall be made directly to the Debtor or, after the Effective Date, the Reorganized Debtor by the Holder of the Allowed Claim with respect to which such check originally was issued.  Any claim in respect of such a voided check shall be made on or before the later of the first (1st) anniversary of the Effective Date and the date ninety (90) days after such Claim is Allowed, and the failure timely to make any such claim shall result in such Claim being forever barred and discharged.

8.9    **Existing Securities and Agreements**.  Upon the Effective Date, except as otherwise provided in the Disclosure Statement or Plan, the Reorganized Debtor shall determine whether it is necessary for any Holder of any debenture, promissory note, pledge agreement, guarantee, mortgage, financing statement, or other instrument evidencing a Claim or a Lien related thereto to surrender such document and/or to execute such other documents to evidence the satisfaction and discharge of the Claim or Lien as provided for in the Plan. The Reorganized Debtor shall provide prompt notice of the determination that surrender is necessary with respect to a Claim or Lien, and no Distribution on account thereof shall be made unless the surrender occurs, unless otherwise ordered by the Bankruptcy Court.

8.10    **Tax Identification Number Affidavit**.  Upon request, the Debtor shall be entitled to obtain the appropriate form and/or affidavit, in a form acceptable to it in its reasonable

discretion, from each Entity that is to receive a Distribution under this Plan as to that Entity's federal tax identification number, as a precondition to issuance of any Distribution.

## ARTICLE IX
## ACCEPTANCE OR REJECTION OF THE PLAN

9.1     **Classes Entitled to Vote**. Each Holder of an Allowed Claim in a Class of Claims against the Debtor that may be Impaired and is to receive a Distribution under the Plan, including any Holder of an Allowed Claim in Classes 2, 3, 4, or 5, shall be entitled to vote separately to accept or reject the Plan. Each Holder of a Claim in a Class of Claims or Equity Interests that is Unimpaired under the Plan, such as Classes 1 or 6, shall be deemed to have accepted the Plan pursuant to Section 1126(f) of the Bankruptcy Code.

9.2     **Class Acceptance Requirement**.   An Impaired Class of Claims shall have accepted the Plan if (i) the Holders (other than any Holder designated under Section 1126(e) of the Bankruptcy Code) of at least two-thirds (2/3) in amount of the Allowed Claims actually voting in such Class have voted to accept the Plan and (ii) the Holders (other than any Holder designated under Section 1126(e) of the Bankruptcy Code) of more than one-half (1/2) in number of the Allowed Claims actually voting in such Class have voted to accept the Plan. For purposes of calculating the number of Allowed Claims in a class of Claims held by Holders of Allowed Claims in such class that have voted to accept or reject the Plan under Section 1126(c) of the Bankruptcy Code, all Allowed Claims in such class held by one entity or any Affiliate shall be aggregated and treated as one Allowed Claim in such Class.

9.3     **Cramdown**.   In the event that any impaired Class of Claims shall not accept the Plan or be deemed not to have accepted the Plan, the proponents of the Plan reserve the right to (a) request that the Bankruptcy Court confirm the Plan in accordance with Section 1129(b) of the Bankruptcy Code and/or (b) modify the Plan to provide treatment sufficient to assure that the Plan does not discriminate unfairly, and is fair and equitable, with respect to the Class(es) not accepting the Plan or being deemed not to have accepted the Plan, and, in particular, the treatment necessary to meet the requirements of Sections 1129(a) and (b) of the Bankruptcy Code with respect to the rejecting Class(es) and any other Class(es) affected by such modifications.

## ARTICLE X
## EFFECT OF CONFIRMATION OF PLAN

10.1     **Vesting of Assets**.   On the Effective Date, except as otherwise provided herein, all Assets of the Estate, including all Causes of Action, shall be transferred to, and shall vest in, the Reorganized Debtor, free and clear of all Liens and Claims, subject to the terms and conditions set forth herein.

10.2     **Amended Organizational Documents of Reorganized Debtor**.   On the Effective Date, the Amended Organizational Documents in substantially the form of **Exhibit 10.2** hereto, which shall be filed with the Bankruptcy Court at least twenty-one (21) days before the Confirmation Hearing, shall become effective and, as appropriate, as promptly as is practicable be filed with the appropriate Governmental Authorities.  The Debtor reserves the right at any time before the Effective Date to amend, restate, or supplement **Exhibit 10.2**.

10.3   **Warrington Bank Amended and Restated Note**.  On the Effective Date, the Warrington Bank Amended and Restated Note shall become effective and be enforceable in accordance with its terms and the Warrington Bank Note shall be cancelled and of no further force and effect.  Entry of the Confirmation Order shall constitute approval by the Bankruptcy Court of the terms of the Warrington Bank Amended and Restated Note.

10.4   **Southeast Capital Amended and Restated Note**.  On the Effective Date, the Southeast Capital Amended and Restated Note shall become effective and be enforceable in accordance with its terms and the Southeast Capital Note shall be cancelled and of no further force and effect.  Entry of the Confirmation Order shall constitute approval by the Bankruptcy Court of the terms of the Southeast Capital Amended and Restated Note.

10.5   **Operation by Reorganized Debtor**.  After the Effective Date, the Reorganized Debtor may operate its businesses, and may use, acquire, and dispose of Assets free of any restrictions imposed under the Bankruptcy Code, subject to the terms of the Plan.

10.6   **Injunction**.  As and to the extent not inconsistent with Sections 524 and 1141 of the Bankruptcy Code, and except as otherwise expressly provided in the Plan, all Entities who have held, hold, or may hold Claims against, or Equity Interests in, the Debtor, are permanently enjoined, on and after the Effective Date, from (a) commencing or continuing in any manner any action or other proceeding of any kind against the Debtor or Reorganized Debtor with respect to any such Claim or that could have been commenced by the Holder of such Equity Interest against the Debtor or Reorganized Debtor on the basis of conduct by the Debtor or Reorganized Debtor on or prior to the Effective Date; (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against the Debtor or the Reorganized Debtor on account of any such Claim or that could have been commenced by the Holder of such Equity Interest against the Debtor or Reorganized Debtor on the basis of conduct by the Debtor or Reorganized Debtor on or prior to the Effective Date; (c) creating, perfecting or enforcing any Lien against the Debtor or Reorganized Debtor, or against any of its Assets, on account of any such Claim or that could have been commenced by the Holder of such Equity Interest against the Debtor or Reorganized Debtor on the basis of conduct by the Debtor or Reorganized Debtor on or prior to the Effective Date; and (d) asserting any right of setoff, subrogation or recoupment of any kind (except under Section 362(b)(26) of the Bankruptcy Code as provided in Section 553 of the Bankruptcy Code) against any obligation due from the Debtor or Reorganized Debtor or against the Assets of the Debtor or Reorganized Debtor on account of any such Claim or that could have been commenced by the Holder of such Equity Interest against the Debtor or Reorganized Debtor on the basis of conduct by the Debtor or Reorganized Debtor on or prior to the Effective Date.

10.7   **Indemnification Obligations**.  The obligations of the Debtor to indemnify, reimburse or limit liability of any person who is serving or has served as one of its directors, officers, employees or agents by reason of such person's prior or current service in such capacity as provided in the applicable articles of organization, operating agreements, partnership agreements, or bylaws, by statutory law or by written agreement, policies or procedures of or with the Debtor shall be recognized and honored and shall bind the Reorganized Debtor and shall not be affected by or discharged by this Plan.  Nothing in this Plan shall be deemed to affect any

rights of any director or officer or any other person against any insurer with respect to any directors or officers liability insurance policies.

10.8    **Discharge of Debtor and Claims**.  Except as otherwise provided in the Plan, the rights afforded herein and the treatment of all Claims herein shall be in exchange for and in complete satisfaction, discharge, and release of all Claims of every nature, including any interest accrued on such Claims from and after the Petition Date, against the Debtor or the Reorganized Debtor, or any of its Assets.  As and to the extent not inconsistent with Sections 524 and 1141 of the Bankruptcy Code, and except as otherwise provided herein, subject to the occurrence of and as of the Effective Date (i) all such Claims against the Debtor shall be satisfied, discharged, and released in full and (ii) all Entities shall be precluded from asserting against the Debtor or the Reorganized Debtor, to the extent the Claims are satisfied in full or Equity Interests retained hereunder, its Assets, or any other or further Claims or Equity Interests based upon any act or omission, transaction, or other activity of any kind or nature, whether known or unknown, that occurred on or prior to the Effective Date, or that could have been commenced by the Holder of an Equity Interest against the Debtor or Reorganized Debtor on the basis of conduct by the Debtor or Reorganized Debtor on or prior to the Effective Date, whether or not (a) a proof of claim or interest based upon such Claim or Equity Interest is filed or deemed filed under Section 501 of the Bankruptcy Code, (b) such Claim or Equity Interest is allowed under Section 502 of the Bankruptcy Code, or (c) the Holder of such Claim or Equity Interest has accepted the Plan; provided that the discharge shall not apply to the Reorganized Debtor's obligations under this Plan or any Plan Document.  Except as provided herein, the Confirmation Order shall be a judicial determination of discharge of all liabilities of the Debtor.

10.9    **No Successor Liability**.  Except as otherwise specifically provided in this Plan or the Confirmation Order, neither the Debtor nor the Reorganized Debtor will have any responsibilities, pursuant to this Plan or otherwise, for any liabilities or obligations of the Debtor or any of the Debtor's past or present Affiliates relating to or arising out of the operations of or Assets of the Debtor or any of the Debtor's past or present Affiliates, whether arising prior to, or resulting from actions, events, or circumstances occurring or existing at any time prior to the Effective Date.  Except as otherwise specifically provided in this Plan, the Reorganized Debtor shall have no successor or transferee liability of any kind or character, for any Claims; provided that the Reorganized Debtor shall have the obligations for the payments specifically and expressly provided, and solely in the manner stated, in this Plan and the Plan Documents.

10.10    **Exculpations**.  As and to the extent not inconsistent with Section 524(e) of the Bankruptcy Code or 26 U.S.C. § 6672, the officers, directors, managers, members, and professionals of the Debtor shall have no liability to any Holder of a Claim or Equity Interest or other Entity for any act, event, or omission in connection with, relating to, or arising out of the Bankruptcy Case, the negotiation of the Plan, the Consummation of the Plan, the administration of the Plan or the property to be distributed under the Plan, except for any liability based on willful misconduct or gross negligence.  In all such instances, the above-referenced parties shall be and have been entitled to reasonably rely on the advice of counsel with respect to their duties and responsibilities in connection with the Bankruptcy Case and under the Plan.    Such exculpation shall not extend to any post-Petition Date act of any Entity other than in connection with that Entity's official capacity in the Bankruptcy Case.

10.11   **Term of Injunction or Stays**.   Unless otherwise provided herein or otherwise ordered by the Bankruptcy Court, all injunctions or stays set forth in 11 U.S.C. §§ 105 and 362 shall remain in full force and effect until the Effective Date rather than the Confirmation Date. Nothing in this Section 10.11, however, shall be construed as a limitation of the permanent discharge and injunction provisions provided for in this Plan.

## ARTICLE XI
## CONDITIONS PRECEDENT TO CONFIRMATION AND EFFECTIVE DATE

11.1   **Conditions**.   The occurrence of the Effective Date and the substantial Consummation of the Plan are subject to satisfaction or, in the sole discretion of the proponents of the Plan, waiver of the following conditions precedent:

(a)   Confirmation Order.   The Confirmation Order shall have become a Final Order and be in full force and effect.

(b)   Warrington Bank Amended and Restated Note.   The Warrington Bank Amended and Restated Note shall have been executed and delivered by the Debtor.

(c)   Southeast Capital Amended and Restated Note.   The Southeast Capital Amended and Restated Note shall have been executed and delivered by the Debtor.

(d)   Governmental Authorizations.   Any authorizations, consents and regulatory approvals from a Governmental Authority required for the consummation of each of the transactions contemplated in this Plan shall have been obtained and shall have become final and nonappealable and, with respect to any court proceeding relating thereto, been approved by Final Order.

(e)   Execution of Documents; Other Actions.   All other actions and documents necessary to implement the Plan shall have been effected or executed.

11.2   **Notice of Effective Date**.   The occurrence of the Effective Date and the date thereof shall be evidenced by a Notice of Effective Date Filed with the Bankruptcy Court by the Reorganized Debtor within five (5) Business Days of the occurrence thereof.

11.3   **Revocation of Confirmation Order or Withdrawal of Plan**.   The proponent of the Plan may revoke or withdraw this Plan prior to the Confirmation Date by filing a Notice of Withdrawal of Plan in the record of the Bankruptcy Case.   If this Plan is withdrawn prior to the Confirmation Date, then the Plan shall be deemed withdrawn and the Confirmation Order (if any has been issued but not entered on the docket) shall be automatically revoked without the need for any action by any party in interest or the Bankruptcy Court.   In such event, the Plan and the Confirmation Order shall be of no further force or effect; the Debtor and all Holders of Claims and Equity Interests shall be restored to the *status quo ante* as of the day immediately preceding the filing of this Plan; all the Debtor's respective obligations with respect to the Claims and Equity Interests shall remain unchanged; and all of the Debtor's rights and claims against all Entities shall be fully preserved and nothing contained herein or in the Disclosure Statement shall be deemed to constitute an admission or statement against interest or to constitute a waiver or release of any claims by or against the Debtor or any other Entity or to prejudice in any manner

the rights of the Debtor or any Entity in any further proceedings involving the Debtor or any other Entity.

## ARTICLE XII
## RETENTION OF JURISDICTION

12.1    **Retention of Jurisdiction**.  To the maximum extent permitted by the Bankruptcy Code or other applicable Law, the Bankruptcy Court shall have jurisdiction of all matters arising out of, and related to, the Bankruptcy Case and the Plan pursuant to, and for the purposes of, Sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following nonexclusive purposes:

(a)    To construe and to take any action to enforce this Plan and to issue such orders as may be necessary for the implementation, execution and confirmation of this Plan;

(b)    To determine the allowance or classification of Claims or Equity Interests (including the Applicable Interest Rate, the Applicable Interest Period, and Applicable Fees and Costs) and to determine any objections thereto;

(c)    To determine rights to Distribution pursuant to this Plan;

(d)    To hear and determine applications for the assumption or rejection of executory contracts or unexpired leases and the allowance of Claims resulting therefrom;

(e)    To determine any and all applications, motions, adversary proceedings, contested matters and other litigated matters that may be pending in the Bankruptcy Court on or initiated after the Effective Date;

(f)    To hear and determine any objection to Administrative Expense Claims or Claims;

(g)    To hear and determine any Causes of Action brought or continued by the Debtor to the maximum extent permitted under applicable Law;

(h)    To hear and determine motions of the Reorganized Debtor seeking the examination of any Entity pursuant to Bankruptcy Rule 2004, for purposes including investigations of potential Causes of Action, to the same extent the Debtor was entitled to seek such examinations prior to the Effective Date;

(i)    To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

(j)    To determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(k)    To hear and determine matters concerning any release, exculpation, or discharge and to enforce the injunctions set forth in the Plan;

(l)      To consider any modifications of the Plan, to cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order;

(m)      To hear and determine all Fee Applications;

(n)      To hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or any transactions, documents, or agreements contemplated by the Plan (including the Plan Documents);

(o)      To hear and determine all questions and disputes regarding title to, and any action to recover any of, the Assets or property of the Debtor or its Estate, wherever located;

(p)      To hear and determine matters concerning state, local, and Federal Taxes in accordance with Sections 346, 505, and 1146 of the Bankruptcy Code;

(q)      To consider and act on the compromise and settlement of any claim against the Debtor or its Estate;

(r)      To hear any other matter not inconsistent with the Bankruptcy Code; provided that, with respect to consideration issued to parties in interest under the Plan, the Bankruptcy Court shall have no further jurisdiction; and

(s)      To enter a Final Decree closing the Bankruptcy Case.

## ARTICLE XIII
## MISCELLANEOUS

### 13.1   Defects, Omissions, Amendments, and Modifications of the Plan.

(a)      The Debtor may, with the approval of the Bankruptcy Court and without notice to Holders of Claims, insofar as it does not materially and adversely affect Holders of Claims, correct any defect, omission, or inconsistency in the Plan in such a manner and to such extent necessary or desirable to expedite the execution of the Plan.

(b)      The Debtor may propose amendments or alterations to the Plan before or after Confirmation as provided in Section 1127 of the Bankruptcy Code if, in the opinion of the Bankruptcy Court, the modification does not materially and adversely affect the interests of Holders of Claims, so long as the Plan, as modified, complies with Sections 1122 and 1123 of the Bankruptcy Code and the Debtor has complied with Section 1125 of the Bankruptcy Code.

(c)      The Debtor may propose amendments or alterations to the Plan before or after the Confirmation Date but prior to substantial Consummation, in a manner that, in the opinion of the Bankruptcy Court, does not materially and adversely affect Holders of Claims, so long as (i) the Plan, as modified, complies with Sections 1122 and 1123 of the Bankruptcy Code, (ii) the Debtor has complied with Section 1125 of the Bankruptcy Code, and, (iii) after notice and hearing, the Bankruptcy Court confirms such Plan, as modified, under Section 1129 of the Bankruptcy Code.

13.2    **Severability**.  If the Bankruptcy Court determines, prior to the Confirmation Date, that any provision in the Plan is invalid, void, or unenforceable, such provision shall be invalid, void, or unenforceable with respect to the Holder or Holders of such Claims or Equity Interests as to which the provision is determined to be invalid, void, or unenforceable and, notwithstanding the invalidity, voidness, or unenforceability of such provision, the Debtor may proceed to seek confirmation of the Plan without such invalid, void, or unenforceable provision, in which case, the invalidity, voidness, or unenforceability of any such provision shall in no way limit or affect the enforceability and operative effect of any other provision of the Plan.

13.3    **Dissolution of Committees**.  On the Effective Date, the Unsecured Creditors' Committee and its Professionals shall be released and discharged of and from all further authority, duties, responsibilities, and obligations relating to or arising from or in connection with the Bankruptcy Case, and the Unsecured Creditors' Committee shall be deemed dissolved; provided that, in the event that the Effective Date occurs prior to the entry of an order with respect to final fee applications of Professionals for the Unsecured Creditors' Committee, the Unsecured Creditors' Committee and their Professionals may seek and recover reasonable compensation in connection with the preparation, filing and prosecution of such applications; provided, further, that if a motion for rehearing or appeal of the Confirmation Order is pending on the Effective Date, then the Unsecured Creditors' Committee shall not be dissolved until that motion or appeal is resolved.

13.4    **Successors and Assigns**. The rights, benefits and obligations of any Entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, personal representative, successor, or assign of such Entity.

13.5    **Notices**.  Any notice required or permitted to be provided under the Plan shall be in writing and served by either (i) certified mail, return receipt requested (or, for the United States, first class mail), postage prepaid, (ii) hand delivery, or (iii) reputable overnight delivery service, freight prepaid, addressed as follows:

If to the Debtor or Reorganized Debtor:
MGFB Properties, Inc.
Attention: Debtor/Reorganized Debtor
17401 Perdido Key Drive
Perdido Key, Florida 32507

With copies, which shall not constitute notice, to:
Adams and Reese LLP
Attention: John M. Duck
4500 One Shell Square
New Orleans, Louisiana 70139
Telephone: (504) 581-3234

<u>and to</u>:
Adams and Reese LLP
Attention: David K. Bowsher
2100 Third Avenue North
Suite 1100
Birmingham, Alabama
Telephone: (205) 250-5000

13.6   **Payment of Statutory Fees**.  Except as otherwise provided herein, for so long as the Bankruptcy Case shall remain open and pending before the Bankruptcy Court, all fees payable pursuant to 28 U.S.C. § 1930 shall be paid by the Debtor, with all such fees determined by the Bankruptcy Court at the Confirmation Hearing to be due on or prior to the Effective Date being paid in Cash by the Reorganized Debtor on the Effective Date.

13.7   **Additional Documents**.  On or before substantial Consummation of the Plan, the Debtor may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to reasonably effectuate and further evidence the terms and conditions of the Plan.

DATED: July 15, 2010

Respectfully submitted:

**MGFB PROPERTIES, INC.**

By:___ /s/ Joseph R. Gilchrist___
Name: Joseph R. Gilchrist___
Title:__President_____

**ADAMS AND REESE, LLP**

By:___ /s/ John M. Duck_____
JOHN M. DUCK
Adams and Reese LLP
4500 One Shell Square
New Orleans, Louisiana  70139
Telephone:  (504) 581-3234
Facsimile: (504) 566-0210

DAVID K. BOWSHER
Adams and Reese LLP
2100 3rd Avenue North
Suite 1100
Birmingham, Alabama  35203
Telephone: (205) 250-5000
Facsimile: (205) 250-5034

*Attorneys for the Debtor*